**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

EDWARD LEV,

                                 Plaintiff,                    9:19-cv-00061 (BKS/DJS)

v.

DONNA LEWIN, in her individual and official capacities
as Superintendent of Hudson Correctional Facility;
ANTHONY J. ANNUCCI, in his individual and official
capacities as Acting Commissioner of the New York
Department of Corrections and Community Supervision;
JOHN DOE 1, in his individual and official capacities as
Deputy Commissioner of the New York Department of
Corrections and Community Supervision; and
JOHN DOE 2, in his individual and official capacities as
Unit Supervisor for the Hudson Correctional Facility
Adolescent Offender Segregation Unit,

                                 Defendants.
_____

**Appearances:**

*For Plaintiff:*
Mario B. Williams
Dallas S. LePierre
NDH LLC
44 Broad Street, NW, Suite 200
Atlanta, GA 30303

*For Defendants Donna Lewin and Anthony J. Annucci:*
Letitia A. James
Attorney General of the State of New York
Helena O. Pederson
Shannan C. Krasnokutski
Assistant Attorneys General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.   INTRODUCTION**

Plaintiff Edward Lev, who is in the custody of the New York Department of Corrections and Community Supervision ("DOCCS") and allegedly suffers from severe mental illness, brings this action under 42 U.S.C. § 1983. (*See generally* Dkt. No. 1). The Complaint alleges that Plaintiff's confinement in a segregated unit at Hudson Correctional Facility ("Hudson") constitutes cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. (*Id.* at 1–2, 6–7, 15).[1] Plaintiff seeks declaratory and injunctive relief, as well as punitive damages, against four DOCCS officers: Defendant Donna Lewin, Hudson's Superintendent; Defendant Anthony J. Annucci, Acting Commissioner of DOCCS; an unnamed officer whose title is Deputy Commissioner of DOCCS; and another unnamed officer whose title is Unit Supervisor for Hudson's Adolescent Offender Separation Unit ("AOSU"). (Dkt. No. 1, at 17). In a Memorandum-Decision and Order entered on May 31, 2019, the Court granted Plaintiff's motion for preliminary injunctive relief and directed Plaintiff's release, who was then a minor, from disciplinary segregation. *Paykina ex rel. E.L. v. Lewin*, 387 F. Supp. 3d 225 (N.D.N.Y. 2019).

Presently before the Court is Defendants' motion for summary judgment on the ground that, *inter alia*, Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Dkt. No. 77). Plaintiff opposes

---

[1] Lev is in custody for a youthful offender adjudication under section 720.20 of the New York Criminal Procedure Law. The parties agree that his claim was properly brought under the Eighth Amendment and not the Due Process Clause of the Fourteenth Amendment. (Dkt. No. 43, at 1–2; Dkt. No. 44, at 5).

Defendants' motion. (Dkt. No. 83). The Court held oral argument on the motion on December 19, 2019. For the reasons that follow, Defendants' motion is granted.

## II. BACKGROUND[2]

The factual background is set forth in *Paykina*, 387 F. Supp. 3d at 230–39. The Court only recites those facts material to the present motion.

### A. Grievance Procedure at Hudson

Plaintiff was incarcerated at Hudson from August 2, 2018 through June 3, 2019. (Dkt. No. 77-12, ¶ 1; Dkt. No. 83-4, ¶ 1). "Upon [his] placement in Hudson," Plaintiff received and reviewed "a copy of the grievance procedures available."[3] (Dkt. No. 83-2, ¶¶ 3–4).

During the time period relevant to this action, Hudson had a "fully functioning inmate grievance process available." (Dkt. No. 77-12, ¶ 5; Dkt. No. 83-4, ¶ 5). The inmate grievance process established by 7 N.Y.C.R.R. § 701 *et seq.*, DOCCS Directive 4040, involves three steps: (i) a complaint to the Inmate Grievance Resolution Committee ("IGRC") at the individual facility; (ii) an appeal to the Superintendent of the facility; and (iii) an appeal to the Central Office Review Committee ("CORC"). (Dkt. No. 77-12, ¶ 6; Dkt. No. 83-4, ¶ 6). Hudson, however, is subject to "DOCCS Directive 4041, titled 'Inmate Grievance Program—

---

[2] The facts have been drawn from Defendants' statement of material facts, (Dkt. No. 62-1), Plaintiff's response and counterstatement of material facts, (Dkt. Nos. 70, 72), and the attached exhibits, depositions, and declarations. The facts are taken in the light most favorable to Plaintiff.

[3] After briefing on the instant motion was complete, the Court issued a Text Order directing Defendants to file the grievance procedures Plaintiff received upon placement in Hudson. (Dkt. No. 99). In response, Plaintiff filed a letter brief asserting that the policy "comprising of two Directives," Directive 4040, as modified by Directive 4041, "covering 20 pages in total" was "never actually given to Plaintiff." (Dkt. No. 100, at 1). Plaintiff acknowledges, however, that the procedure, and Directives, "are available to inmates to review in the library, law library and cottage," and that inmates are provided with an orientation handbook, which does not set forth the Directives in their entirety, but does outline the grievance procedure. (Dkt. No. 100, at 2; Dkt. No. 101-1, at 39). *Cf.*, *Arnold v. Goetz*, 245 F. Supp. 2d 527, 538 (S.D.N.Y. 2003) ("An institution keeps an inmate ignorant of the grievance procedure when correctional officials either fail to inform him of the procedure altogether or fail to provide him with access to materials which could otherwise educate him about the use of that process."). Plaintiff does not contend he was not informed of the grievance procedure.

3

Modification Plan'"; the primary modifications contained in Directive 4041 "address the fact that the unique populations in certain facilities limit the availability of inmates to function as inmate representatives or to serve on inmate grievance review committees." (Dkt. No. 77-12, ¶ 7; Dkt. No. 83-4, ¶ 7). While "the purpose of Directive 4041 . . . is to modify the procedures contained in Directive 4040 for facilities subject to Directive 4041," such facilities "must [still] comply with the provisions of Directive 4040 to the extent that Directive is not otherwise modified by Directive 4041." (Dkt. No. 77-12, ¶ 8; Dkt. No. 83-4, ¶ 8 (citing 7 N.Y.C.R.R. § 702.2(b)). The inmate grievance process under Directive 4041, like Directive 4040, involves three steps: (i) a complaint to the "designated staff person"; (ii) an appeal to the Superintendent; and (iii) an appeal to CORC. (Dkt. No. 100-3, at 1–2). Thus, only the first step of Directive 4041, which requires submission of a grievance to a designated staff person, rather than the IGRC, is significantly different than Directive 4040.

### B. Plaintiff's Placement in the AOSU at Hudson

In November 2018, Plaintiff "was placed in the AOSU as a result of a disciplinary hearing related to his cheeking medication." (Dkt. No. 83-4, ¶ 28; Dkt. No. 85-1, ¶ 27; Dkt. No. 83-1, at 2). Plaintiff did not file a grievance challenging his placement in the AOSU or the conditions of his confinement in the AOSU. (Dkt. No. 77-12, ¶ 22; Dkt. No. 83-4, ¶ 22). Plaintiff states that after reviewing Hudson's grievance procedures, it was his "understanding" that his "placement" in the AOSU "was not grievable." (Dkt. No. 83-2, ¶ 3–5).

### C. Plaintiff's Grievances at Hudson

While he was at Hudson, Plaintiff filed three grievances. (Dkt. No. 77-12, ¶ 18; Dkt. No. 83-4, ¶ 18). The first grievance concerned his alleged failure to receive corrective eyeglasses. (Dkt. No. 77-12, ¶ 19; Dkt. No. 83-4, ¶ 19). The second and third grievances, which Plaintiff submitted while in the AOSU, concerned the form of Plaintiff's medication and Plaintiff's

4

request "to move to a different cell within the AOSU," respectively. (Dkt. No. 77-12, ¶¶ 20–21; Dkt. No. 83-4, ¶¶ 20–21).

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys*, 426 F.3d at 553–54 (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)).

## IV. DISCUSSION

Defendants argue they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 77-11, at 7–12). Plaintiff responds that because "disciplinary infractions are non-grievable," there were no administrative remedies available to him. (Dkt. No. 83, at 5 (citing 7 N.Y.C.R.R. § 701.3(e)(2))).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "As a juvenile in a resident facility, plaintiff is obligated to exhaust his administrative remedies per the PLRA."[4] *Molina v. New York*, No. 1:09-cv-00467, 2011 WL 6010907, at *4, 2011 U.S. Dist. LEXIS 138188, at *12 (N.D.N.Y. Dec. 1, 2011) (citing *Lewis ex rel. Lewis v. Gagne*, 281 F. Supp. 2d 429, 433 (N.D.N.Y. 2003)).

To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007). Failure to exhaust administrative remedies is an affirmative defense; accordingly, a defendant bears the burden of persuasion on whether a plaintiff failed to satisfy the exhaustion requirements. *See id.* at 216; *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015); *Nelson v. Plumley*, No. 12-cv-422, 2015 WL 4326762, at *7, 2015 U.S. Dist. LEXIS 91905, at *20 (N.D.N.Y. July 14, 2015) ("As an affirmative defense, the party

---

[4] Neither party contends otherwise.

asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence." (citation omitted)). The defendant discharges its initial burden of production by "demonstrating that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure.[5] *White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order); *Williams v. Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016) ("[D]efendants bear the initial burden of establishing the affirmative defense of non-exhaustion by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures which demonstrate that a grievance process exists and applies to the underlying dispute." (internal quotation marks omitted)). The burden of production then shifts to the plaintiff, who must show that "other factors rendered a nominally available procedure unavailable as a matter of fact." *Hubbs*, 788 F.3d at 59; *see Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ("Under the PLRA, a prisoner need exhaust only 'available' administrative remedies.").

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858 (2016). The Second Circuit has explained that "an administrative remedy may be unavailable when": (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123–24 (quoting *Ross*, 136 S. Ct. at 1859–60).

---

[5] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

7

It is undisputed that Plaintiff did not file a grievance challenging the conditions of his confinement in Hudson's AOSU. (Dkt. No. 77-12, ¶ 22; Dkt. No. 83-4, ¶ 22). Plaintiff asserts that after reviewing Hudson's grievance procedures, it was his "understanding" that his "placement" in the AOSU "was not grievable." (Dkt. No. 83-2, ¶ 3–5). Thus, he argues, there were no administrative remedies available and he is excused from the exhaustion requirement. While Plaintiff is correct that a disciplinary disposition is not subject to the grievance process, *see* 7 N.Y.C.R.R. § 701.3(e)(2) ("[A]n individual decision or disposition resulting from a disciplinary proceeding . . . is not grievable."), it is subject to an administrative appeals process that must be exhausted prior to filing suit challenging a disciplinary disposition. *See Marhone v. Cassel*, No. 16-cv-4733, 2018 WL 4189518, at *5, 2018 U.S. Dist. LEXIS 149320, at *11 (S.D.N.Y. Aug. 31, 2018) (explaining that although "[a]dministrative or disciplinary decisions are non-grievable" "inmates exhaust these decisions through administrative appeals" (citing *Davis v. Barrett*, 576 F.3d 129, 131–32 (2d Cir. 2009))). Further, Plaintiff's argument is irrelevant because, as he acknowledges, he does not bring a due process claim challenging the disciplinary disposition; he claims that the conditions of his confinement violate the cruel and unusual punishments clause of the Eighth Amendment. (Dkt. No. 43, at 1–2; Dkt. No. 44, at 5). Indeed, the Second Circuit has recognized that the administrative remedies an inmate must exhaust before bringing a claim alleging that a disciplinary hearing procedure violated the procedural due process clause are different from the administrative remedies an inmate must exhaust before bringing an Eighth Amendment claim challenging conditions of confinement. *See Davis*, 576 F.3d at 133 (noting that the Circuit had "distinguished exhaustion for [a] due process claim from exhaustion for [an] Eighth Amendment claim (the latter being a claim as to the

manner in which the sanctions were imposed)" (citing *Ortiz v. McBride*, 380 F.3d 649, 652 (2d Cir. 2004))).

In *Ortiz*, the plaintiff alleged (i) that the disciplinary hearing that led to a 90-day sentence in the special housing unit ("SHU") violated his Fourteenth Amendment right to procedural due process and (ii) that "the SHU conditions to which he was subjected constituted cruel and unusual punishment in violation of the Eighth Amendment." *Ortiz*, 380 F.3d at 652. The Second Circuit found that the plaintiff exhausted his administrative remedies with respect to his due process claim by appealing the disciplinary hearing but that because he did not file a grievance challenging the SHU conditions, he had not "exhausted his administrative remedies with respect to his Eighth Amendment claim." *Id.* at 654.

Thus, because Plaintiff is challenging the conditions of his confinement, he was required to exhaust his administrative remedies via the grievance process. *Marhone*, 2018 WL 4189518, at *6, 2018 U.S. Dist. LEXIS 149320, at *14 ("Plaintiff must follow the grievance process for his prison condition claims and the administrative appeal procedure for his Fourteenth Amendment Due Process Clause claims."). Plaintiff asserts in conclusory fashion that even if the grievance procedure were available, because the regulations state that a "disposition resulting from a disciplinary proceeding . . . is not grievable," 7 N.Y.C.R.R. § 701.3(e)(2), "no 'similarly situated individual of ordinary firmness' would believe that an administrative remedy is available." (Dkt. No. 83, at 7). An administrative remedy is unavailable when "the regulatory scheme providing for that appeal is 'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it].'" *Williams*, 829 F.3d at 124 (quoting *Ross*, 136 S. Ct. at 1859). Plaintiff's argument, however, rests on his mistaken belief that his claim regarding the conditions of his confinement was not grievable. Indeed, the regulations themselves provide that: "If an inmate is

unsure whether an issue is grievable, he . . . should file a grievance and the question will be decided through the grievance process." 7 N.Y.C.R.R. § 701.3(e)(3). And the language in § 701.3(e)(3), is "not so opaque and confusing" that no reasonable prisoner could use it. *See Waters v. Melendez*, No. 15-cv-0805, 2018 WL 3079764, at *7–8, 2018 U.S. Dist. LEXIS 84876, at *20–21 (N.D.N.Y. May 18, 2018) (rejecting the argument that the language of § 701.3(e) is "opaque and confusing"), *report and recommendation adopted*, No. 15-cv-805, 2018 WL 3069209, 2018 U.S. Dist. LEXIS 103590 (N.D.N.Y. June 21, 2018), *aff'd*, 783 F. App'x 56 (2d Cir. 2019). Moreover, Plaintiff has presented no evidence that he was misled by the handbook he received or by prison officials regarding administrative remedies or the grievance process. Finally, there is evidence that Plaintiff, who filed three grievances while at Hudson, two of which he filed while he was in AOSU, was familiar with the process. (Dkt. No. 77-3, at 3; Dkt. No. 77-4, at 1, 5). Thus, Plaintiff's mistaken belief, even if reasonable, regarding the availability of the administrative process, or which process to use, does not excuse his failure to exhaust.[6] *See Ross*, 136 S. Ct. at 1858 (rejecting a "special circumstances" exception to rule of exhaustion, even in "cases in which a prisoner makes a reasonable mistake about the meaning of a prison's grievance procedures"); *see also Stewart v. Cty. of Suffolk*, No. 16-cv-1871, 2018 WL 6079966, at *3, 2018 U.S. Dist. LEXIS 198729, at *9 (E.D.N.Y. Nov. 21, 2018) (finding the plaintiff's "misinterpretation of the Inmate Handbook" did not excuse him from exhausting the administrative remedies available to him). As Plaintiff has failed to raise a material issue of fact

---

[6] The unverified Complaint states: "Upon information and belief," Plaintiff "has been unable to comply with the appropriate grievance procedure related to the conditions of his confinement." (Dkt. No. 1, ¶ 27). The Second Circuit recently noted that "[w]hether mental illness can render an administrative remedy unavailable under *Ross* is an open question in this Circuit." *Osborn v. Williams*, No. 18-340-PR, 2019 WL 6499564, at *2, 2019 U.S. App. LEXIS 36977, at*4 (2d Cir. Dec. 11, 2019). The Court, however, need not address this issue because Plaintiff does not contend that mental illness rendered the administrative process unavailable to him.

10

with respect to the exhaustion of administrative remedies, Defendants' motion for summary judgment is granted.[7]

## V. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 77) is **GRANTED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED with prejudice**;[8] and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

**Dated:  January 8, 2020**

Brenda K. Sannes
U.S. District Judge

---

[7] Accordingly, the Court does not reach Defendants' argument that Plaintiff's claims for declaratory and injunctive relief (Second Cause of Action) are moot. (Dkt. No. 77-11, at 13–14).

[8] Dismissal with prejudice is proper because Plaintiff was transferred from Hudson to Adirondack Adolescent Offender Facility on June 3, 2019, and from Adirondack to Five Points Correctional Facility on June 25, 2019, (Dkt. No. 77-12, ¶¶ 2–3; Dkt. No. 83-4, ¶¶ 3–4), and the 21-day time limit and 45-day period for requesting an exception to the time limit have expired, (Dkt. No. 100-2, at 7, 12). *See Grafton v. Hesse*, No. 15-cv-4790, 2017 WL 9487092, at *9, 2017 U.S. Dist. LEXIS, at *24 (E.D.N.Y. Aug. 25, 2017) ("[W]here the inmate can no longer exhaust administrative remedies because he or she has been transferred or is no longer in custody and had ample opportunity to exhaust prior to being released or transferred but failed to do so, dismissal with prejudice is proper."), *report and recommendation adopted*, 2017 WL 4286266, 2017 U.S. Dist. LEXIS 4286266 (E.D.N.Y. Sept. 27, 2017), *aff'd*, 783 F. App'x 29 (2d Cir. 2019); *Vidro v. Erfe*, No. 18-cv-00567, 2019 WL 4738896, at *9, 2019 U.S. Dist. LEXIS 165733, at *25 (D. Conn. Sept. 26, 2019) (concluding that dismissal with prejudice was proper where inmate was time-barred from filing a grievance, noting that inmate's "failure to exhaust is at this point incurable").